CATTLEMEN'S TRUST CO. v. CANTRELL.
(No. 8662.)

(Court of Civil Appeals of Texas. Ft. Worth. May 26, 1917.)

1. VENDOR AND PURCHASER &⩔279—FORECLOSURE OF VENDOR'S LIEN — NECESSARY PARTIES—DEFENDANTS.

Where the payee of notes secured by a vendor's lien indorsed them without recourse to a corporation as part payment for shares of stock, and left the purchased shares with the corporation to secure the payment of the notes, he was not a necessary party to a suit subsequently filed by the corporation against the maker of the notes in which the property was sold for less than the amount of the notes.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 778–782.]

2. CORPORATIONS &⩔123(24) — PLEDGE OF STOCK—ENFORCEMENT—EVIDENCE.

In a suit to enjoin the disposition of shares of stock held by the defendant corporation as collateral to secure the payment of vendor's lien notes to discharge balance due after foreclosure of vendor's lien, evidence *held* not to support a finding that the land was sold at foreclosure sale at an inadequate price.

3. BILLS AND NOTES &⩔301 — LIABILITY OF INDORSERS—DISCHARGE.

The plaintiff was not discharged as guarantor on the two notes by reason of the fact that he was not made a party to the foreclosure suit, and hence the trial court erred in awarding injunctive relief restraining the defendant from selling or disposing of the stock which was liable for the balance due on the notes.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721.]

Appeal from Montague County Court; Homer B. Latham, Judge.

Suit for injunction by B. J. Cantrell against the Cattlemen's Trust Company and others. Judgment for plaintiff, and named defendant appeals. Reversed and rendered, denying injunction sought.

A. H. Kirby, of Abilene, for appellant. W. S. Jameson, of Montague, Paul Donald, of Bowie, and J. A. Templeton, of Ft. Worth, for appellee.

BUCK, J. Appellee, as plaintiff, filed suit against the Cattlemen's Trust Company, the First National Bank of Bowie, Tex., A. E. Thomas, and T. C. Phillips, as defendants, to enjoin them, and each of them, from selling or in any manner disposing of or incumbering 30 shares of stock in the Cattlemen's Trust Company of Ft. Worth, Tex., held by the First National Bank of Bowie as collateral to secure the payment of the first two notes, designated Nos. 2 and 3, of a series of five vendor's lien notes executed by C. W. Ratliff to appellee in part payment of certain described land conveyed by appel-

lee to Ratliff by deed of August 11, 1911. The notes were in the usual form, providing for 10 per cent. attorney's fees in case of suit, etc. Plaintiff below further asked that said 30 shares of stock, on final hearing, be restored to him free from all claims of defendants, or either of them. He further alleged that he had sold and indorsed said notes without recourse to the defendant the Cattlemen's Trust Company, and in part payment therefor he was to receive the 30 shares of stock aforesaid, said stock being of the par value of $10 per share, and represented at the time of making said contract to be worth the sum of $20 per share; that he had received in full payment of said notes the sum of $500 in money and the said 30 shares of stock. He further alleged that defendant the Cattlemen's Trust Company's duly authorized agent had induced plaintiff to make a written contract with it, a copy of which was attached to plaintiff's petition and marked Exhibit A, and that under said agreement and contract plaintiff was induced to place the said 30 shares of stock in the First National Bank of Bowie to be used and held by the bank in escrow as collateral to secure the prompt payment of the first two notes of the series mentioned above. He alleged that at the time of signing the said instrument he did not understand the same, and that it was given without any additional consideration; that on December 21, 1914, the defendant the Cattlemen's Trust Company exercised their right of election and declared all of said notes due and filed suit against the said C. W. Ratliff and wife on all of said notes, asking a foreclosure of their said lien against the grantees, and for a judgment for balance due on said notes, including the principal, interest, and attorney's fees, and recovered judgment against Ratliff and wife for the sum of $1,245, with interest at 10 per cent. and costs of suit, and procured said land to be sold by the sheriff of Montague county on March 2, 1915, for the sum of $1,000.

Plaintiff alleged that said suit was instituted and prosecuted to judgment and said sale made thereunder without the knowledge or consent of plaintiff, and plaintiff was not made a party thereto in order to have the matter finally determined, and that he was entitled to be heard in said cause, as he was a necessary and proper party thereto; that said land was sold for a grossly inadequate price, and if the same had been fairly sold and the plaintiff had been made a party thereto, it would have, as plaintiff believed, sold for enough to pay said judgment in full. He further alleged that the First National Bank of Bowie was in possession of said 30 shares of stock and was holding same under the control of the defendants Phillips and Thomas, and that the defendant the Cattlemen's Trust Company was claiming a balance due on said judgment in the sum of $303.17, with interest from March 2, 1915.

The defendants the First National Bank of Bowie and Phillips and Thomas filed a disclaimer, alleging that they were merely stakeholders and tendered the certificates of stock into court. The defendant the Cattlemen's Trust Company answered, denying generally and specially the allegations in plaintiff's petition contained, and alleged that plaintiff had requested defendant to foreclose the lien securing the notes described in his petition, and that plaintiff had full notice of said suit, judgment, and sale, and was present at said sale, and could have protected himself at said sale, by reason of which plaintiff was estopped to question said sale, or to assert any claim against this defendant.

Judgment was rendered for plaintiff for possession of the 30 shares of stock aforesaid, and making permanent the temporary injunction theretofore granted restraining the defendants from selling or disposing of said stock, and further ordering the defendants bank, Thomas, and Phillips to deliver to plaintiff said stock and awarding the costs of suit against the defendant the Cattlemen's Trust Company. The Cattlemen's Trust Company has appealed.

The court filed his findings of fact and conclusions of law as follows:

### "Findings of Fact.

"(1) I find that on or about the 11th day of August, 1911, plaintiff sold and conveyed to C. W. Ratliff 80 acres of land situated in Montague county, and retained five vendor's lien notes against said land for the sum of $200 each, payable December 1, 1913, 1914, 1915, 1916, 1917, respectively.

"(2) I find that on or about the 16th day of February, 1914, plaintiff traded said notes to defendant Cattlemen's Trust Company for 30 shares of stock in said Cattlemen's Trust Company, he receiving a difference of $500 in cash.

"(3) I find that plaintiff indorsed said notes without recourse, but as a part of said trade plaintiff guaranteed the payment of notes 2 and 3.

"(4) I find that the Cattlemen's Trust Company, foreclosed the lien on said land and that said land was sold.

"(5) I find that B. J. Cantrell was not made a party to said foreclosure suit.

"(6) I find that said land was sold at an inadequate price, and that if it had been sold at the market price it would have brought enough to satisfy all of said notes.

### "Conclusions of Law.

"I conclude as a matter of law that said Cantrell should have been made a party to the foreclosure suit, and that he is discharged as guarantor on the said two notes by reason of the fact that he was not made a party to said suit, and that he should recover said stock."

While appellant has presented in its brief some ten assignments of error, the controlling question is as to whether or not the appellee was a necessary party to the suit filed by appellant against C. W. Ratliff and wife, by which he sought a foreclosure of the vendor's lien against the land heretofore mentioned.

The evidence discloses that the appellant and appellee, in consummation of their agreement to make the trade pleaded by ap-

pellant and admitted by appellee, made and executed a written contract, reciting the sale of the five vendor's lien notes each in the sum of $200, due December 1, 1913, 1914, 1915, 1916, and 1917, and reciting further that in the sale of said notes by Cantrell to the said Cattlemen's Trust Company, Cantrell had. taken in part payment therefor 30 shares of stock of said company, and that the appraised value of the said 80 acres against which the vendor's lien was reserved in said· notes and the amount of said notes showed the said notes to be more than 50 per cent. of said appraised value, and that therefore it was agreed between the parties that the 30 shares of stock should be placed in escrow in the First National Bank of Bowie as collateral security for the prompt payment of said first two notes and interest at the maturity of same.  Said agreement further provided as follows:

"It is agreed and understood that note No. 2 of said series is to be extended to mature December 1, 1914, the same as the maturity of note No. 3, and that, when said notes Nos. 2 and 3 have been paid off and discharged by said Ratliff, then the said First National Bank of Bowie shall deliver to said Cantrell the said 30 shares of stock.

"It is further understood and agreed that during the time the said stock is held in escrow the said Cantrell is to be entitled to the dividends thereon the same as if the said stock had been delivered direct to him.

"It is further agreed and understood that in the event that said notes 2 and 3 should further be extended, by mutual agreement, or otherwise, between said Cantrell, Ratliff, and said trust company, that then said stock shall continue to be held in escrow until said notes are paid, as herein provided.

"It is further provided that in the event that said Ratliff should default in the payment of any of said notes and said trust company be compelled to foreclose and sell out the land, and said land should fail to bring the amount of the judgment, interest, and costs, that then the said trust company shall have the right to require either said Cantrell to pay the difference, or to proceed to sell said stock, upon ten days' notice, and apply the proceeds received therefrom to the payment of said difference, with the return to said Cantrell of the remainder of such proceeds, after paying such difference.

"In testimony whereof witness our hands this the 25th day of February, A. D. 1914.  B. J. Cantrell.  The Cattlemen's Trust Company of Ft. Worth, by A. L. Camp, President."

It. was further shown without controversy that the notes were transferred by Cantrell to the trust company without recourse, and that Cantrell received $500 in cash, and was to receive the 30 shares of stock in accordance with the contract which he (Cantrell) executed with the company.  Cantrell further testified:

"I first subscribed for the stock with the agent of defendant trust company and offered to indorse the notes without recourse and take $500 cash and the 30 shares of stock for the notes.  The agent of the trust company told me the matter would have to be submitted to the company.  Afterwards the agent of the company came back to me and told me the company would not take the notes unless I would leave the stock up to secure the payment of the first two notes.  At the same time the agent presented to me the contract (Exhibit A) which the company required before it would take the notes, and I signed same and the agent left with me a copy of the contract.  This contract was signed by me before I received the $500 in cash. * * * I did write a letter to defendant trust company requesting it to foreclose the lien against Ratliff."

This letter, written on the letter head of Cook & Alcorn, local attorneys for the appellant company, and addressed to the Cattlemen's Trust Company, is as follows:

"Your notice of the annual stockholders' meeting of the company for the election of directors for the ensuing year has been received.  It is my intention to be present at this meeting, and will do so, unless something arises to prevent me, and in that event I will appoint a proxy.

"Referring to the notes I sold the company, payable to me and executed by C. W. Ratliff, it does not appear that there is much probability that Mr. Ratliff will ever be able to pay this place out.  He has let at least 20 acres of the land in cultivation lay out this year, and has in cotton about 18 or 20 acres, and cotton on this is not very good.  Has had picked out four bales and is holding them at home, probably mortgaged, and will get about one bale more. He is letting the fence go to the bad.  I understand that this party is saying that he can stay on this place in spite of me or the company. It would appear from what I have heard that he intends to stay on this place as long as he can and get the rents, or rather what he can make, without paying. anything and get off when he has to.

"Your very truly,  B. J. Cantrell."

Appellee further testified:

"I. saw and talked to Mr. W. W. Cook, attorney at Montague, before he brought the suit of foreclosure for defendant trust company, and told him to go ahead with the foreclosure.  I talked with Mr. Cook about the matter after the suit was filed and knew the suit had been filed.  I was present in person at the sale of the land by the sheriff, but did not bid on the land and took no action of any kind to make the land bring the amount of the judgment.  I knew that the land was bought in by Paul Donald for $1,000.  So far as I know or remember, there was but one bid for the land and that was by Paul Donald."

It was shown that in the application made to the trust company for the sale of the notes described plaintiff stated as follows:

"And I hereby swear that the consideration paid for the aforesaid property by the said C. W. Ratliff was $1,200.00, of which $—— was paid in cash and $1,200.00 in promissory notes, of which one has been fully paid and canceled."

Paul Donald testified:

"I bought the land at said sale for $1,000 cash. * * * There was no other bid for the land than mine.  I think the land was worth $1,200 to $1,400.  I think my bid of $1,000 cash was a fair price for the land for cash, but it was worth what I sold it for part cash and part on time."

[1] We do not think appellee was a proper or necessary party to the suit filed by the appellant company against C. W. Ratliff and wife.  By his indorsement of the notes without recourse he specially declined to assume any responsibility as a party thereto, and he was not bound thereon, except by the very act of transferring them he engaged that they were what they purported to be, to wit, the valid obligation of the parties whose names were upon the notes.  His liability as such

indorser without recourse would be restricted to the following instances: (1) If any of the prior signatures were not genuine; (2) if the notes were invalid between the original parties because of the want or illegality of the consideration; (3) if any prior party was incompetent; or (4) the indorser was without title. 1 Daniel on Negotiable Instruments, § 670, p. 742. In the absence of any of these contingencies, and none are shown or claimed in the instant case, the appellee, had he been made a party to the foreclosure suit, could have successfully pleaded his transfer of the notes without recourse and his right to dismissal with his costs. No judgment could have been obtained against him. And it is an elementary rule that no person should be made a party who has no interest in the suit and against whom, if brought to a hearing, no decree can be had. Ryburn v. Getzdaner, 1 Posey, 349, citing Story's Eq. Pl. § 231. And the question of whether or not plaintiff in the foreclosure suit would have the right to subject the 30 shares of stock to the payment of any balance due said plaintiff would not arise and could not be determined until the sale under the foreclosure had been effected. The question of Cantrell's liability, or that of his shares of stock, on the contract between him and the appellant company, would depend on whether or not the land under the foreclosure suit sold for enough to satisfy the judgment, and until that question was determined Cantrell or his stock was in no sense liable. Furthermore, it appears from the record, and without controversy, that the suit for foreclosure was brought at the instance of the appellee, and with his full knowledge, and that he was present at the sale thereunder, and that he failed to bid for the land.

[2] We are further of the opinion that the finding of the court that the land sold for an inadequate price is not supported by the evidence. The evidence shows that the land was sold by appellee to Ratliff for $1,200, all on time. Paul Donald, the purchaser under the foreclosure sale, testified:

"I think my bid of $1,000 cash was a fair price for the land for cash, but it was worth what I sold it for part cash and part on time."

Plaintiff testified that the land was worth from $1,200 to $1,400 at the time it was sold by the sheriff. There is no contention that the officer selling the land was authorized to accept other than cash therefor, and as the only evidence as to the value of the land for cash is that the amount bid was a fair price for the land, we are of the opinion that the sale shows to have been made for a fair and adequate price. Irrespective of the question as to whether appellee was a necessary party to the foreclosure suit, it follows that appellant's first assignment of error must be sustained and the judgment of the trial court reversed.

[3] Inasmuch as we hold that the trial court erred in concluding as a matter of law that the appellee should have been made a party to the foreclosure suit, and inasmuch as such conclusion of law by the trial court was the basis of the judgment rendered, it follows that the appellee was not discharged as guarantor on the two notes by reason of the fact that he was not made a party to the foreclosure suit, and that the trial court erred in awarding the injunctive relief prayed for by appellee.

The judgment of the trial court is reversed, and judgment here rendered for appellant denying the injunction sought.